20 A.3d 787

**James DOE**

v.

**Mary ROE.**

**No. 95 Sept. Term, 2010.**

Court of Appeals of Maryland.

May 23, 2011.

688

Joseph M. Creed (Timothy F. Maloney and Levi S. Zaslow of Joseph, Greenwald & Laake, P.A., Greenbelt, MD), on brief, for Petitioner.

Anton L. Iamele (Iamele & Iamele, LLP, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

"[Jeremy] Bentham stated the case against retroactivity most succinctly when he likened it to 'dog law.' He was referring to the age-old method of training dogs by waiting until they do what they are to be forbidden to do, and then kicking them." NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 41.02 (5th ed. 1992) [hereinafter SUTHERLAND]; see JEREMY BENTHAM, *Truth* versus *Ashhurst, in* 5 THE WORKS OF JEREMY BENTHAM 235 (1863) ("They won't tell a man beforehand what it is he *should not* do—they won't so much as allow of his being told: they lie by till he has done something which they say he should not *have done,* and then they hang him for it. What way, then, has any man of coming at this dog-law?"). This case presents the question of whether Mary-

land Code (1974, 2006 Repl.Vol.), Courts & Judicial Proceedings Article, § 5–117—enacted in 2003 expressly to extend from three years to seven years the statute of limitations for civil[1] claims stemming from alleged child sexual abuse—permits, at least under certain circumstances, a kicking of Bentham's dog, albeit in a procedural way.

James Doe challenges here the judgment of the Court of Special Appeals, which reversed the judgment of the Circuit Court for Calvert County, the latter having reasoned that the Legislature intended § 5–117 to apply "partially retroactively" to sexual abuse claims filed against him that, as of the effective date of the extended limitations enactment, had not been barred by the previously-applicable three-year limitations period. We hold, for reasons to be explained more fully *infra*, that, assuming *arguendo* application of § 5–117 to the claims in the present case represents a retrospective application of the statute, § 5–117 is a procedural and remedial statute, and, accordingly, it may be given such retrospective application to claims that were not-yet barred by the previously-applicable three-year limitations period as of the extended period's effective date, 1 October 2003.

## FACTS AND LEGAL PROCEEDINGS

Mary Roe[2] ("Respondent" or "Roe") was born on 29 September 1983. She reached the age of majority on 29 September 2001. *See* Maryland Code (1957, 2005 Repl.Vol.), Article 1, § 24 ("Except . . . as otherwise specifically provided by statute, a person eighteen years of age or more is an adult for all purposes whatsoever. . . ."). Roe alleges in her complaint

---

1. In the criminal law context, the Supreme Court has held that "a law enacted after expiration of a previously applicable limitations period violates the *Ex Post Facto* Clause when it is applied to revive a previously time-barred prosecution." *Stogner v. California,* 539 U.S. 607, 632–33, 123 S.Ct. 2446, 2461, 156 L.Ed.2d 544, 565 (2003).

2. The Court of Special Appeals ordered the parties to be referred to by fictitious names, *see Roe v. Doe,* 193 Md.App. 558, 560 n. 1, 998 A.2d 383, 385 n. 1 (2010). We granted Petitioner's motion to have the parties referred to similarly in these proceedings.

in this litigation that James Doe ("Petitioner" or "Doe"), her grandfather, raped her on two separate occasions, the first of which occurred when Roe was either six or seven years of age, and the second incident when she was eight years of age.

At the time Roe reached the age of majority, the limitations period on the civil claims stemming from the alleged sexual assaults was governed by Maryland Code (1974, 1998 Repl. Vol.), Courts & Judicial Proceedings Art., § 5–101, which provided that "[a] civil action at law shall be filed within three years from the date it accrues...." Chapter 360 of the Acts of 2003, effective 1 October 2003, however, added § 5–117 to the Courts & Judicial Proceedings Article, establishing the statute of limitations "for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor" as "7 years [from] the date that the victim attains the age of majority." Section 2 of Chapter 360, which remains uncodified, provides that "[t]his Act may not be construed to apply retroactively to revive any action that was barred by the application of the period of limitations applicable before October 1, 2003."

On 3 September 2008, Roe filed a five-count complaint against Doe, alleging (1) assault; (2) battery; (3) false imprisonment; (4) intentional infliction of emotional distress; and (5) negligence. Doe responded with a "Motion to Dismiss Complaint and Request for Hearing," arguing that all of the claims were time-barred because Roe filed her complaint after 28 September 2004, one day shy of three years from the date on which Roe reached the age of majority. Doe asserted that the seven-year statute of limitations did not apply to Roe's claims against Doe, asserting that "[t]he [L]egislature made it clear that the new legislation was prospective only."

The Circuit Court, on 22 January 2009, heard oral argument on Doe's motion to dismiss and Roe's opposition, and took the matter under advisement. On 3 February 2009, the Circuit Court issued a three-page memorandum opinion, holding that

all of Roe's claims [3] were time-barred:

> The language is clear that [§ 5–117] cannot be applied retroactively. If the [L]egislature intended for CJ § 5–117 to apply to those actions still viable as of October 1, 2003, it would have had to explicitly enact such language. "A statute is presumed to operate prospectively from its effective date, absent clear language to the contrary, or unless the manifest intention of the Legislature indicates otherwise." *Rawlings v. Rawlings*, 362 Md. 535, 555[, 766 A.2d 98, 109] (2001). Here, there is no clear language to contradict the presumption that the statute is prospective or has selective retroactivity, as [Roe] contends. Even the legislative history of CJ § 5–117 indicates that the statute is not retroactive. Since the enactment of Chapter 360, the Maryland Legislature has introduced, and rejected, numerous attempts to make § 5–117 retroactive.
>
> ＊　　＊　　＊
>
> Because [Roe]'s cause of action accrued in 2001, before the 2003 enactment of Chapter 360, the "period of limitations applicable" to her claims is three years. Therefore, [Roe] had until September 28, 2004 to file a complaint, and, thus her complaint, filed September [3], 2008, is time-barred.[4]

Alternatively, the Circuit Court held that even "[i]f the Court were to apply CJ § 5–117 retrospectively, [Doe]'s due process

---

**3.** Roe dismissed voluntarily the assault count. *See* Maryland Code (1974, 2006 Repl.Vol.), Courts & Judicial Proceedings Article, § 5–105 ("An action for assault . . . shall be filed within one year from the date it accrues.").

**4.** The Circuit Court also ruled that the negligence claim, were it not barred by the statute of limitations, "may be dismissed on other grounds." The Circuit Court explained that the duty of care alleged in Roe's complaint—"that [Doe] owed his granddaughter, [Roe], a duty to foster an environment to [Roe]'s growth and education while she was residing at [his] home"—"is not a recognized duty in Maryland, and, thus cannot support a claim of negligence." Roe failed to appeal this alternate ground for dismissal and, therefore, a judgment rendered in Roe's favor here does not revive the negligence count. *See Roe*, 193 Md.App. at 562 n. 3, 998 A.2d at 385 n. 3.

rights would be infringed because he has a vested right to be free from a suit where the statute of limitations has run."

Roe noted a timely appeal to the Court of Special Appeals. A panel of our appellate brethren reversed the judgment of the Circuit Court, explaining that:

SECTION 2 [i.e., the uncodified section] manifests the legislative intent that Chapter 360 have some retroactive application. If Chapter 360 were intended to apply purely prospectively, then it would have sufficed to enact only SECTION 3. In that way, the ordinary rule would apply under which legislation is presumed to operate only prospectively. But, here, it cannot be concluded that Chapter 360 operates only prospectively because, to do so, would render SECTION 2 surplusage, in its entirety. That reading violates a cardinal rule of statutory construction.

SECTION 2, by its plain language, prohibits a construction of CJ § 5–117 that would effect a fully retroactive application that revived causes of action that were barred, prior to the enactment of Chapter 360, under the previously applicable law of limitations. Once again, if the Legislature intended, in addition, that CJ § 5–117 also bar causes of action on which limitations had not run, as of October 1, 2003, under the prior limitations law, then the Legislature did not say so. Further, if that were the legislative intent, it could have been accomplished simply by enacting SECTION 3 and omitting SECTION 2.

Defendant's position seems to be that the prior limitations law continues to govern claims that arose prior to October 1, 2003, and that CJ § 5–117 governs only claims that arose on or after October 1, 2003. But, that is not what SECTION 2 says. Defendant's reading would have SECTION 2 state, "That this Act may not be construed to apply retroactively to revive any action that was barred or becomes barred by the application of the period of limitations applicable before October 1, 2003." Adding words to a statute to affect the meaning manifested by the statute's plain language is unsound statutory construction.

*Roe v. Doe,* 193 Md.App. 558, 565, 998 A.2d 383, 387–88 (2010). Such a conclusion, the Court of Special Appeals explained, was consistent with § 5–117's legislative history and its pre-history. *See Roe,* 193 Md.App. at 566–69, 998 A.2d at 388–390. Finally, the intermediate appellate court held that:

> [T]he General Assembly did not infringe any vested or substantial right of Defendant when it extended the period of limitations on claims of sexual abuse of minors and made that extension applicable to claims that were not barred, as of the effective date of the new legislation, by expiration of the prior limitations period.

*Roe,* 193 Md.App. at 579, 998 A.2d at 395.

Doe filed a timely Petition for Writ of Certiorari, which we granted, *Doe v. Roe,* 416 Md. 272, 6 A.3d 904 (2010), to consider whether "§ 5–117 [may] be properly applied retroactively to permit a claim that arose before the effective date of § 5–117, and which is barred by the prior statute of limitations." [5]

## STANDARD OF REVIEW

■ As we explained in *Menefee v. State,* 417 Md. 740, 747–48, 12 A.3d 153, 157 (2011):

> In reviewing the Circuit Court's grant of a motion to dismiss, "our task is confined to determining whether the trial court was legally correct in its decision to dismiss." *Washington Suburban Sanitary Comm'n v. Phillips,* 413 Md. 606, 618, 994 A.2d 411, 418 (2010) (quoting *Debbas v. Nelson,* 389 Md. 364, 372, 885 A.2d 802, 807 (2005)); *see Fioretti v. Md. State Bd. of Dental Exam'rs,* 351 Md. 66, 71, 716 A.2d 258, 261 (1998); *Shenker v. Laureate Educ., Inc.,*

---

**5.** Petitioner also presented another question of whether "a retroactive application of ... § 5–117 impair[s] Petitioner's vested right and thereby violate[s] his right to due process under Article 24 of the Declaration of Rights." Although we granted certiorari to consider this second question, on 20 December 2010, counsel for Petitioner wrote to the Court, stating that "Petitioner hereby abandons any contention that the application of ... § 5–117 to this case would impair a vested right." Accordingly, this second question is no longer before the Court.

411 Md. 317, 334, 983 A.2d 408, 418 (2009) ("We review the grant of a motion to dismiss as a question of law."); *Price v. Upper Chesapeake Health Ventures, Inc.*, 192 Md.App. 695, 702, 995 A.2d 1054, 1058 (2010), *cert. denied*, 415 Md. 609, 4 A.3d 514 (2010).

## DISCUSSION

Recently, in *Ali v. CIT Technology Financing Services, Inc.*, 416 Md. 249, 257, 258, 6 A.3d 890, 894, 895 (2010), we explained that although "[i]n Maryland the general rule is that '[a] civil action at law shall be filed within three years from the date it accrues'" (quoting Cts. & Jud. Proc. § 5–101), such a "'one-size-fits-all' approach does not always serve to further the policies underlying the three-year limit," and, accordingly, "the Legislature [has] enacted numerous exceptions to § 5–101's three-year statute of limitations." One such exception, § 5–117, is at the heart of the present matter.

### I. The Making of § 5–117

In *Piselli v. 75th Street Medical*, 371 Md. 188, 212, 808 A.2d 508, 522 (2002), we explained that "the principle that statutory time limits for a minor to bring an action do not begin running until the age of majority has been firmly established in our law for a long time." *See* Cts. & Jud. Proc. § 5–201 ("When a cause of action ... accrues in favor of a minor or mental incompetent, that person shall file his action within the lesser of three years or the applicable period of limitations after the date the disability is removed."). Accordingly, before § 5–117 was enacted, victims of child sexual abuse had until the day prior to their twenty-first birthday to file a civil action for damages relating to such abuse. *See Mason v. Bd. of Educ. of Baltimore County*, 375 Md. 504, 826 A.2d 433 (2003).

Concerned that a three-year statute of limitations may effectuate a unique injustice in cases of child sexual abuse, the Maryland Legislature first considered in 1994 extending the generally-applicable three-year statute of limitations on civil claims by alleged child sexual abuse victims. Although House Bill 326 of 1994—similar to an earlier draft of Senate Bill 68

(2003)—passed the House of Delegates and was referred to the Senate Judicial Proceedings Committee, it received an unfavorable report before the latter, *see* Senate Bill 68 (2003), Fiscal and Policy Note. It would be another nine years before efforts to extend the statute of limitations for sexual abuse victims were revived.

By 2003, Maryland's failure to address anew this issue since 1994 apparently reached critical mass. *See* Baltimore–Washington Conference Council on Ministries, Letter in Support of Senate Bill 68 (2003) (stating that, at the time Senate Bill 68 was being considered, "Maryland [wa]s one of only ten states that ha[d] not extended the statute of limitations in recognition of the special reporting difficulties often encountered in child sexual abuse and other serious crimes committed against children"). Numerous individuals and organizations renewed their support for an extension of the three-year statute of limitations for child sexual abuse cases. One organization expounded upon the unique circumstances inherent to child sexual abuse cases:

> Perpetrators use many tactics to prevent their victims from disclosing abuse. These range from threats against the victim or loved ones, manipulating the victim, convincing the victim nothing is wrong, and exploiting the victim's desire to keep a family together. Some victims remain financially and emotionally dependent on the perpetrator well into their late teens and twenties. Others face pressure from other family members to remain silent, or have a deep sense of shame. A short, three year statute of limitations effectively prevents many of these victims from ever obtaining justice in the civil courts.

Maryland Coalition Against Sexual Assault, Inc., Testimony in Support of Senate Bill 68 (25 February 2003); *see also* Letter From Eileen King, Regional Director, Justice for Children, to the Senate Judicial Proceedings Committee (24 February 2003) ("Child abuse victims may not know or understand the harm that has occurred as a result of the abuse; many problems may only develop gradually. A twenty-one year old victim will not have had the time to see the impact of abuse on

his or her relationships, parenting, work, or studies."); Citizens' Review Board for Children, Statement to the Senate Judicial Proceedings Committee (25 February 2003) ("A sexually abused child may have a variety of psychological reactions to his or her victimization. . . . In many cases, the child seeks to avoid thinking about the abuse. . . . In addition, children may experience serious mental health problems caused by the sexual abuse. These may divert attention from adult business affairs such as law suits.").

At First Reading, Senate Bill 68 provided:

Section 1. Be it enacted by the General Assembly of Maryland, That the Laws of Maryland read as follows:

### Article—Courts and Judicial Proceedings

5–117

(A) In this section, "sexual abuse" has the meaning stated in § 5–701 of the Family Law Article.

(B) An action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed within 12 years of the latter of:

(1) the victim's 21st birthday; or

(2) the date on which the victim knew or reasonably should have known that the alleged abuse was actionable.[6]

(C) This section may not be construed to preclude a court from applying any other applicable exception to the running of the applicable statute of limitations.

---

**6.** The proposed statute, in this early iteration, would have adopted a "discovery rule" for child sexual abuse cases. Under the "discovery rule" a cause of action does not "accrue" within the contemplation of a statute of limitations until a potential plaintiff knows or should have known that he or she suffered an injury. *See Harig v. Johns–Manville Prods. Corp.*, 284 Md. 70, 76, 394 A.2d 299, 303 (1978) (recognizing that the discovery rule may be applied, whether by the Legislature or the Judiciary, in certain situations in which "the fact that a tort has been committed may go unnoticed for years, because the plaintiff is unqualified to ascertain the initial wrong and could not be reasonably expected to know of the tort until actual injury is experienced").

(D) This section shall apply to any action commenced on or after October 1, 2003, including any action that would have been barred by the application of the period of limitation applicable before October 1, 2003.

Section 2. And be it further enacted, That this Act shall take effect October 1, 2003.

Between the First and Third Readings of the Bill, Senator Brian E. Frosh, then-and-now Chairperson of the Senate Judicial Proceedings Committee, wrote to Assistant Attorney General Kathryn M. Rowe regarding (1) "whether the application of the [initial version of the] bill to apply retroactively to cases that were barred prior to the effective date of the law would violate due process"; and (2) "what the effect would be if the bill is passed without any provision as to whether it is to be given retroactive or prospective effect." [7] Letter from Kathryn M. Rowe to Sen. Brian E. Frosh, Chairman, Judicial Proceedings, at 1 (10 March 2003) [hereinafter "Rowe Letter"]. In her informal advice letter [8] addressing the initial inquiry, Ms. Rowe first noted a split in authority regarding whether statutes extending a statute of limitations for certain classes of actions would be read to revive causes of action barred by a previously-in-place limitations period, and then explained that "[t]he question that must be answered is wheth-

---

7. Senator Frosh also sought guidance as to "whether the bill could constitutionally be amended to allow a one year window in which plaintiffs could bring suits that have already been barred by the statute of limitations." Letter from Kathryn M. Rowe to Brian E. Frosh, Chairman, Judicial Proceedings, at 1 (10 March 2003). Resolution of this issue has no bearing on the present case.

8. We have noticed in earlier cases that an informal advice letter issued by an Assistant Attorney General "has no significance of its own." *State Ethics Comm'n v. Evans*, 382 Md. 370, 384 n. 4, 855 A.2d 364, 372 n. 4 (2004); *see Pub. Serv. Comm'n of Md. v. Wilson*, 389 Md. 27, 57 n. 18, 882 A.2d 849, 867 n. 18 (2005) ("Although we quote here from the advice letter of the Assistant Attorney General, we afford no enhanced weight to its conclusions and analysis."). We discuss Ms. Rowe's letter here, not for any precedential or persuasive value, but rather because it appears to us that Ms. Rowe's letter served as an impetus for substantive amendments to Senate Bill 68, as reflected in the differences between the bill as introduced originally and as passed by the General Assembly.

er Maryland courts would apply the federal rule [allowing such statutes to revive previously-barred claims], or the rule that appears to be the majority rule among the states in analyzing the constitutionality of a retroactive application of Senate Bill 68." [9]   On this point, Ms. Rowe concluded:

> Having reviewed all of these cases,[10] it is my view that there is no reported case in Maryland that would mandate the unconstitutionality of [a fully] retroactive application of Senate Bill 68.  However, it is possible, given the actions of other states, and its own statement in *Dua* [*v. Comcast Cable of Md., Inc.*, 370 Md. 604, 805 A.2d 1061 (2002) ], that the Court could conclude that retroactive application to revive barred causes of action violates Due Process.

Rowe Letter, at 4. Regarding the second inquiry, Ms. Rowe opined that it was her "view that in the absence of a specific provision, the statute could be interpreted to have prospective effect, and that most likely would mean that it would apply only to causes of action based on abuse occurring after the effective date."  Rowe Letter, at 5.

Less than two weeks after Ms. Rowe responded to Senator Frosh's inquiries, a revised version of the bill surfaced.  This version provided, as § 5–117(a) and (b) do currently:

> Section 1.  Be it enacted by the General Assembly of Maryland, That the Laws of Maryland read as follows:

### Article—Courts and Judicial Proceedings

5–117

---

9.  *See* op. at 707–08, 20 A.3d at 799–800.

10.  Ms. Rowe, although not asked to opine specifically on the issue presented to us—i.e., whether § 5–117 was intended to apply to causes of action that had accrued, but were not yet barred by expiration of the three-year statute of limitations—recognized that "[a]ll of the relevant cases involve application of a change in the statute of limitations to revive a barred cause of action, and do not address the validity of retroactive application to extend a statute of limitations that has not yet run."  Rowe Letter, at 4 n. 1.

(A) In this section, "sexual abuse" has the meaning stated in § 5–701 of the Family Law Article.

(B) An action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed within 7 years of the date that the victim attains the age of majority.

Section 2.   And be it further enacted, That this Act may not be construed to apply retroactively to revive any action that was barred by the application of the period of limitations applicable before October 1, 2003.

Section 3.   And be it further enacted, That this Act shall take effect October 1, 2003.

As codified, Cts. & Jud. Proc. § 5–117, provides:

**§ 5–117.   Actions arising from alleged sexual abuse.**

(a) *"Sexual abuse" defined.*—In this section, "sexual abuse" has the meaning stated in § 5–701 of the Family Law Article.

(b) *Limitations period.*—An action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed within 7 years of the date that the victim attains the age of majority.

Sections 2 and 3 of Chapter 360 of the Acts of 2003, however, are not codified.[11]

## II.   Did the Legislature Intend for § 5–117 to Apply Retrospectively to Those Claims Not Barred Yet Under § 5–101 as of the Effective Date of § 5–117?[12]

Generally speaking, "[t]he legislative function is principally concerned with the establishment of future rules of conduct."

---

**11.**   *See* MARYLAND DEPARTMENT OF LEGISLATIVE SERVICES, LEGISLATIVE DRAFTING MANUAL 2011, at 97 (2010) ("Provisions of law need not be codified in order to be legally binding."); *Prince George's County v. Maringo*, 151 Md.App. 662, 671 n. 1, 828 A.2d 257, 262 n. 1 (2003) ("The parties do not dispute that this uncodified portion of the bill has the same force and effect as the codified portion.").

**12.**   Logically preceding the issue of whether the Legislature intends a particular statute to be given retrospective effect is the issue of whether

the proposed application of the statute to the facts of a particular case, in the first instance, is a retrospective application of that statute at all. *See State Ethics Comm'n v. Evans,* 382 Md. 370, 389, 855 A.2d 364, 375 (2004) (Harrell, J., dissenting). The questions presented in the current case did not embrace such a question—and no cross-petition was filed—that encompassed the notion that applying § 5–117 to causes of action not yet barred under the generally-applicable three-year limitations period is not a retrospective application of the statute. *See* Brief of Petitioner at 8 ("Roe's proposed application is plainly retroactive. . . ."); Brief of Respondent at 15 ("Roe concedes that her reliance on . . . CJ § 5–117 as an extension of the limitations period applicable to cases arising from conduct that occurred before October 1, 2003, but not yet time barred by CJ § 5–101 on October 1, 2003, calls for retroactive application of the Act."). Such an argument was made by Roe—and rejected apparently—in the Court of Special Appeals. Although Doe characterizes this argument as "confusing," there seems to us to be a cogent argument that could have been presented that the application of § 5–117 to Roe's claims—not yet barred under the three-year statute of limitations—is not a retrospective application of that statute, such that a retrospectivity analysis is unnecessary.

To be sure, "[o]ur cases, for the most part . . . have not considered in any depth the definition of, or developed an analytical paradigm for determining in the first instance, what constitutes retroactive application of a statute." *Evans,* 382 Md. at 389, 855 A.2d at 375 (Harrell, J., dissenting); *see also John Deere Constr.& Forestry Co. v. Reliable Tractor, Inc.,* 406 Md. 139, 147, 957 A.2d 595, 599 (2008) ("[T]his Court has only provided limited analysis of what constitutes a retrospective application of a statute."). Yet, a sizeable number of cases hold that applying a statute extending a limitations period to claims—predating the new period's enactment—not yet barred by the prior limitations period is not a retrospective application of that new limitations period—"because the suit was filed after the effective date of the statutory amendment." *Atlanta Country Club, Inc. v. Smith,* 217 Ga.App. 515, 458 S.E.2d 136, 137 (1995); *see United States v. Seale,* 542 F.3d 1033, 1037 (5th Cir.2008), *vacated on other grounds,* 550 F.3d 377 (2008) (noting the "line of cases hold[ing] that applying an amended statute of limitations to a suit filed after the amendment is not a 'retroactive' application at all"); *Vernon v. Cassadaga Valley Cent. Sch. Dist.,* 49 F.3d 886, 889 (2d Cir.1995) ("As courts presented with the issue have recognized, applying a new or amended statute of limitations to bar a cause of action filed after its enactment, but arising out of events that predate its enactment, generally is not a retroactive application of the statute."); *United States ex rel. Milam v. Regents of the Univ. of Cal.,* 912 F.Supp. 868, 882 (D.Md.1995) (same); *State v. Skakel,* 276 Conn. 633, 888 A.2d 985, 1022 n. 46 (2006) ("We note that a significant number of courts have concluded that applying an amendment to a statute of limitations enlarging the unexpired period of time within which a [case] may be brought is not a retroactive application of the extended period at all."); *State v. Hirsch,* 245 Neb. 31, 511 N.W.2d 69, 78 (1994) ("[T]he application of [an] extended statute [of limitations] to existing causes of action is not a retroactive law."); *Wschola v. Snyder,* 478 N.W.2d 225, 227 (Minn.Ct.App.1991) ("*Klimmek* [*v. Independent School Dist. No.*

SUTHERLAND § 41.01. That said, "there is no question of the [L]egislature's general power to enact laws which operate retroactively or retrospectively." SUTHERLAND § 41.04. Although the Court's early statements regarding the permissibility of applying retrospectively changes to a limitations period may be characterized fairly as inconsistent at best,[13] more recently, we have established

---

487, 299 N.W.2d 501 (Minn.1980)] suggests that the application of a new statute of limitations to an existing cause of action is not a retroactive application...."); *Commonwealth v. Johnson,* 520 Pa. 165, 553 A.2d 897, 900 (1989) (quoting *United States v. Kurzenknabe,* 136 F.Supp. 17, 23 (D.N.J.1955)) ("There is nothing 'retroactive' about the application of an extension of a statute of limitations, so long as the original statutory period has not yet expired."); *Kindred v. Amalgamated Sugar Co.,* 114 Idaho 284, 756 P.2d 401, 407 (1988) (same); *Dobson v. Quinn Freight Lines, Inc.,* 415 A.2d 814, 816 (Me.1980) (holding that an extension of a statute of limitations to actions not already barred by the prior limitations period "is not 'retroactive' application in any sense that would require us to presume that such application was not intended by the legislature"); *Nichols v. Wilbur,* 256 Or. 418, 473 P.2d 1022, 1022 (1970) ("[I]t is generally and rather consistently held by most courts that statutes enlarging the period of limitations apply to existing causes of actions that had not been barred by the previous limitation. It is held that such statutes are not retrospective in application but are merely an extension of the right to bring the action.").

13. By way of example, *Mayor and Council of Hagerstown v. Sehner,* 37 Md. 180 (1872), involved an extension of a limitations period for certain rioting damages from three years to five years. At the time of the alleged damage, the generally-applicable three-year limitations period applied. *See Sehner,* 37 Md. at 189–90. Chapter 282 of the Acts of 1867, however, was later passed, enlarging the statute of limitations for damages such as those claimed by Sehner from three to five years. *Sehner,* 37 Md. at 189. Although Sehner filed suit within the new five-year period, at the time the newer legislation was enacted, the original limitations period had run. *See id.* Thus, the Court was faced with the extent to which an extended limitations period could revive claims already barred by the prior limitations period.

We stated, on one hand, that "the weight of authority elsewhere sustains th[e] proposition" that "it is not within the scope of legislative power to pass a law which will have the effect to revive ... a cause of action which was completely barred by limitations before its passage," and that "[b]y the current decisions in other States the right to plead the Statute of Limitations when it has once run and become a bar to a demand ... is treated as a vested right, beyond the reach of retrospective legislation." *Sehner,* 37 Md. at 190. Yet, the Court held ultimately that, as a municipal government (as opposed to a private individual or

[s]everal well settled rules of statutory interpretation . . . applicable in seeking to ascertain the actual intention of the legislature. These are: (1) A statute is presumed to operate prospectively from its effective date, absent clear language to the contrary, or unless the manifest intention of the Legislature indicates otherwise; (2) Despite the presumption of prospectivity, a statute effecting a change in procedure only, and not in substantive rights, ordinarily applies to all actions whether accrued, pending or future, unless a contrary intention is expressed; and (3) A statute affecting or impairing substantive rights will not operate retrospectively as to transactions, matters, and events not in litigation at the time the statute takes effect unless its language clearly so indicates.[14]

*Rawlings v. Rawlings,* 362 Md. 535, 555, 766 A.2d 98, 109 (2001); *see Rawlings,* 362 Md. at 556, 766 A.2d at 110 (stating that "if the Rule only [a]ffects procedure, and not substantive rights, and is therefore remedial in nature . . . [it] may be applied retrospectively unless a contrary intention is expressed"); *Allstate Ins. Co. v. Kim,* 376 Md. 276, 289, 829 A.2d 611, 618 (2003) (stating that a "statute governing procedure or remedy" will be given retrospective effect, even "to cases pending in court when the statute becomes effective"); *State v. Stowe,* 376 Md. 436, 454, 829 A.2d 1036, 1047 (2003); *Kelch v. Keehn,* 183 Md. 140, 144, 36 A.2d 544, 545 (1944). We address "Rule No. 2" first to determine whether a statute acting to extend the limitations period to claims not-yet barred by the original limitations period are "procedural" and/or "remedial."

In *Langston v. Riffe,* 359 Md. 396, 408–09, 754 A.2d 389, 395–96 (2000), we expressed our view of what constitutes a "remedial" statute:

---

private corporation), the Mayor and Council of Hagerstown enjoyed no such vested right. *See Sehner,* 37 Md. at 196–97.

**14.** Of these principles, only the first and second "rules" are in play potentially, as Doe waived his argument regarding impairment of a vested right. *See supra* note 5.

Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries. They also include statutes intended for the correction of defects, mistakes and omissions in the civil institutions and the administration of the state. The definition of a remedial statute has also been stated as a statute that relates to practice, procedure, or remedies and does not affect substantive or vested rights.

Every statute that makes any change in the existing body of law, excluding only those enactments which merely restate or codify prior law, can be said to "remedy" some flaw in the prior law or some social evil.

The appellate courts of this state have also defined remedial legislation. For instance, we [have] said that an act is remedial in nature when it provides only for a new method of enforcement of a preexisting right. Under Maryland law, statutes are remedial in nature if they are designed to correct existing law, to redress existing grievances and to introduce regulations conducive to the public good.

(Citations and quotation marks omitted.)

■ We think that § 5–117 is remedial. The extended limitations period "improves remedies already existing for the enforcement of rights and the redress of injuries," as an extended period of time during which alleged victims of child sexual abuse may seek redress in the courts "improves" the child's right to seek compensation for the alleged wrongs committed against him or her. Further, it may be said fairly that § 5–117 is "designed to correct [then-]existing law," and to "introduce regulations conducive to the public good," as the legislative history of the statute reflects that the extended limitations period—both in Maryland[15] and in other jurisdictions—was passed (at least in part) "in response to the outcry and evolving understanding of childhood sexual abuse." Sandee L. Chadwick, *The Disappearing* Ex Post Facto *Clause*

---

**15.** *See supra,* op. at 695–97, 20 A.3d at 792–93.

*and Reviving Time–Barred Prosecutions,* 30 Sw. U.L. Rev. 197, 215 (2000); *see People v. Frazer,* 21 Cal.4th 737, 88 Cal.Rptr.2d 312, 982 P.2d 180, 183 (1999), *overruled in part on other grounds, by Stogner v. California,* 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003) ("Beginning in the late 1980's, lawmakers across the country became increasingly aware that young victims often delay reporting sexual abuse because they are easily manipulated by offenders in positions of authority and trust, and because children have difficulty remembering the crime or facing the trauma it can cause."); Kelly W.G. Clark et al., *Of Compelling Interest: The Intersection of Religious Freedom and Civil Liability in the Portland Priest Sex Abuse Cases,* 85 Or. L.Rev. 481, 506 (2006) ("[T]he 'why' of using the extended statute of limitations against a[n offender] boils down to the fact that a person functioning at the emotional level of a child—no matter what age—cannot then recognize the three requisite elements of tort, injury, and causation. As a result, more and more states have adopted extended statutes of limitations for child abuse actions."); David Viens, *Countdown to Injustice: The Irrational Application of Criminal Statutes of Limitations to Sexual Offenses Against Children,* 38 Suffolk U.L.Rev. 169, 170 (2004) ("Many states have recognized the special circumstances of childhood sexual abuse and the legitimate reasons why a complaint often cannot be made until many years after the abuse."). Finally, in concluding that—at least as applied to causes of action not-yet barred by the generally-applicable three-year limitations period—§ 5–117 is a remedial and procedural statute, we are in accord with the overwhelming majority of jurisdictions that hold that a change to a limitations period—when applied to claims not-yet-barred by the previous limitations period—is procedural or remedial in nature.[16,17]

---

**16.** *See, e.g., United States ex rel. Massarella v. Elrod,* 682 F.2d 688, 689 (7th Cir.1982) ("[T]he extension of the statute of limitations in this case was ... a 'merely procedural' change."); *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,* 6 F.Supp.2d 263, 265 (S.D.N.Y. 1998) ("[T]he law is now clear that a lengthened statute of limitations is

■ It would be an oversimplification of the law, of course, to say that every application of a statute expanding a statute

'procedural'—that is, it does not alter substantive rights—and can be applied to pre-existing claims...."); *Jackson v. Airways Parking Co.*, 297 F.Supp. 1366, 1381 (N.D.Ga.1969) ("Extending the period of limitations pertains to the remedy and not to the right, and thus the period of limitations may be extended and become applicable to existing causes of action."); *Hendrick v. ABC Ins. Co.*, 760 So.2d 650, 658 (La.Ct.App.2000), *rev'd on other grounds*, 787 So.2d 283 (2001) ("A statute of limitation is remedial in nature and, generally, applies to all actions instituted after its effective date even though the cause of action accrues before the statute was enacted."); *City of Boston v. Keene Corp.*, 406 Mass. 301, 547 N.E.2d 328, 335 (1989) ("[T]he defendants' interest in the limitations defense is procedural rather than substantive. We have held that ... the running of the applicable limitations period bars only the legal remedy, while leaving the underlying cause of action unaffected."); *Kilgore v. Barnes*, 508 So.2d 1042, 1045 (Miss.1987) (stating that the principle that the "recogni[tion of authority] of legislatures to enlarge periods of limitation with respect to existing claims" is "consistent with [the] general principle that an act remedial in its character embraces claims existing when the act was passed."); *Lester v. State Workmen's Compensation Comm'r*, 161 W.Va. 299, 242 S.E.2d 443, 446 (1978) (noting the line of cases holding that "statutes enlarging the limitation period are merely procedural and remedial in nature"); *Dixie Constr. Co. of Ga. v. Williams*, 95 Ga.App. 767, 98 S.E.2d 582, 583 (1957) ("Statutes of limitation look only to remedy and not to substantive rights, and, unless the cause of action is barred at the time of the passage of the act extending the statute of limitation, it will be effective."); *Wentz v. Price Candy Co.*, 352 Mo. 1, 175 S.W.2d 852, 853 (1943) ("Ordinary statutes of limitation are held to affect the remedy only. The principle is well settled that the period of limitation prescribed by such statutes may be enlarged and become applicable to existing causes of action...."); *Strickland v. Draughan*, 1884 WL 1948, *1, 1884 N.C. LEXIS 26, *2 (N.C.1884) ("It is well settled that the legislature may change the remedy, and as the statute of limitations applies only to the remedy, that it may also change that....").

**17.** Holding that this extension of a limitations period is remedial and procedural is also in line with what the appellate courts of this State have said regarding statutes of limitation generally. *See, e.g., Polakoff v. Turner*, 385 Md. 467, 485–86, 869 A.2d 837, 848 (2005) ("Retroactive application applies to the parties before the court and to all others by and against whom claims may be pressed, consistent with ... *procedural barriers such as statute of limitations*.") (emphasis added) (internal quotation marks and citation omitted); *Thompson v. Thompson*, 285 Md. 488, 494, 404 A.2d 269, 272 (1979) ("Judge Delaplaine said for our predecessors in *McMahan v. Dorchester Fert. Co.*, 184 Md. 155, 40 A.2d 313 (1944): 'Statutes of limitations are remedial legislation and rest upon sound public policy....' "); *Doughty v. Prettyman*, 219 Md. 83, 88, 148 A.2d 438, 440 (1959) ("Included in the procedural matters governed by the law of this state is the statute of limitations.").

of limitations period is remedial or procedural. *See Lujan v. Regents of the Univ. of Cal.*, 69 F.3d 1511, 1516 (10th Cir.1995) (quoting *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8, 16 (1965)) ("The terms 'substantive' and 'procedural' do not have a fixed content. The line between "substance" and "procedure" shifts as the legal context changes.' "); *Lujan*, 69 F.3d at 1516 ("Statutes of limitations are neither substantive nor procedural per se but have 'mixed substantive and procedural aspects.' ") (quoting *Sun Oil Co. v. Wortman*, 486 U.S. 717, 736, 108 S.Ct. 2117, 2129, 100 L.Ed.2d 743, 761 (1988) (Brennan, J., concurring)). In fact, we stated that, in certain circumstances, a statute changing a limitations period may constitute a substantive change in the law. For instance, in *Blocher v. Harlow*, 268 Md. 571, 581, 303 A.2d 395, 400 (1973), we opined:

> There is a substantial body of law to the effect that where a limitation period is stipulated in a statute creating a cause of action it is not to be considered as an ordinary statute of limitations, but is to be considered as a limitation upon the right as well as the remedy, with the result that as to causes of action already accrued at the time of the enactment of a subsequent statute enlarging the limitation period on such causes of action the subsequent statute will not be held applicable so as to extend or enlarge the original limitation period, particularly where no legislative intent to give the subsequent statute a retroactive application clearly appears from its language.

In the present case, however, § 5–117 is not a limitations period that "is stipulated in a statute creating a cause of action." Stated differently, the remaining "live" counts brought by Roe against Doe—(1) battery; (2) false imprisonment; and (3) intentional infliction of emotional distress—were viable claims prior to the enactment of § 5–117. Additionally, the placement of § 5–117 within Subtitle 1 ("Limitations") of Title 5 of the Courts and Judicial Proceedings Article supports further our view that the Legislature intended to extend the limitations period in cases of child sexual

abuse, and nothing more (i.e., no new cause of action was created thereby).

We would be faced with a different situation entirely had Roe's claim been barred under the three-year limitations period as of 1 October 2003, the effective date of § 5–117.[18] Because we are not presented with that scenario, we express no holding regarding the applicability of § 5–117 to child sexual abuse claims barred under the three-year statute as of 1 October 2003, the effective date of the new statute.

Because we deem § 5–117—at least as applied to those claims not-yet barred by the previously-applicable three-year limitations period as of the effective date of § 5–117—a procedural and remedial statute, and because we see no indication in the record [19] that this procedural and remedial statute was

18. As we said in *Rawlings v. Rawlings*, 362 Md. 535, 559, 766 A.2d 98, 111 (2001), "a remedial or procedural statute may not be applied retroactively if it will interfere with vested or substantive rights." (Quoting *Langston v. Riffe*, 359 Md. 396, 418, 754 A.2d 389, 400 (2000)). In the present case, we hold the extended limitations period does not "interfere with vested or substantive rights," as is it well established that "[a]n individual does not have a vested right to be free from suit or sanction for a legal violation until the statute of limitations for that violation has expired." *Crum v. Vincent*, 493 F.3d 988, 997 (8th Cir.2007).

19. Doe argues that "[t]he [L]egislature unequivocally prohibited any such [partially-retrospective] application" in Section 2 of the Act, where it states that the Act "may not be construed to apply retroactively to revive any action that was barred by the application of the period of limitations applicable before October 1, 2003." We would disagree. Merriam Webster's Collegiate Dictionary (10th ed. 1993) defines "revive" as "to live again" or "to return to consciousness or life." Accordingly, Section 2 only acts to prohibit application of the Act to those claims that were dead or barred as of the effective date of the statute, and does not speak directly to an application of the act to those claims that were not yet dead or barred as of the effective date. *See Dolezal v. Blevins*, 105 N.M. 562, 734 P.2d 802, 803 (App.1987) (applying the "general view that the legislature may validly enlarge the period of limitation and make it applicable to existing causes of action" to a statute enlarging a limitations period that provided that "[n]othing in this act shall be construed to revive a judgment for which the statute of limitation has expired under prior law").

Section 2 of Senate Bill 68 provides explicitly: "[T]his Act may not be construed to apply retroactively to revive any action that was barred by

intended to be applied prospectively only, *see Rawlings*, 362 Md. at 555, 766 A.2d at 109 (stating that a statute effecting a change in procedure only ... ordinarily applies to all actions whether accrued, pending or future, *unless a contrary intention is expressed* ) (emphasis added), we afford § 5–117 no presumption of prospectivity [20] such that we would need to determine whether the "manifest intention of the Legislature" was for the statute to apply retrospectively.[21]

---

the application of the period of limitations applicable before October 1, 2003." Put simply, as of 1 October 2003—the effective date of the statute—(save the assault count), Roe's claims were not yet barred by § 5–101 and thus, Section 2 is inapplicable to the present scenario. *See Roe*, 193 Md.App. at 565, 998 A.2d at 387–88 ("Defendant's reading would have SECTION 2 state, 'That this Act may not be construed to apply retroactively to revive any action that was barred *or becomes barred* by the application of the period of limitations applicable before October 1, 2003.' "). Even Dr. Frankenstein would not be interested in reviving a claim that is not yet dead.

**20.** We have applied the presumption of prospectivity to statutes effectuating an extension of the generally-applicable three-year limitations period for certain types of claims. For instance, in *Slate v. Zitomer*, 275 Md. 534, 541, 341 A.2d 789, 793 (1975), we applied the "general presumption ... that all statutes, State and federal, are intended to operate prospectively" to a statute extending the period of limitations for bringing a wrongful death suit from two years to three. Yet, there, application of the presumption of prospectivity was apt, as we held that "the substantive rights of the respective defendants would be affected by retrospective application of the three year period of limitations," considering Maryland's "wrongful death statute created a new liability not existing at common law, [and thus] compliance with the period of limitations for such actions is a condition precedent to the right to maintain the action." *Slate*, 275 Md. at 542, 341 A.2d at 794. Accordingly, in *Slate*, we were dealing with "a substantive provision rather than a procedural one." *Slate*, 275 Md. at 543, 341 A.2d at 795; *see also Blocher v. Harlow*, 268 Md. 571, 579–80, 585, 303 A.2d 395, 399, 402 (1973) (applying the presumption of prospectivity to a statute extending the limitations period for certain actions against an estate, but involving a situation where the "extending or enlarging [of] the original limitation period ... is part of the substantive remedy"); *Smith v. Westinghouse Elec. Corp.*, 266 Md. 52, 58, 291 A.2d 452, 456 (1972) (similar). Such cases are inapposite to the present factual scenario.

**21.** That notwithstanding, even if we were to hold that the statute is not procedural or remedial—thus engaging the presumption of prospectivity—we think that recourse to the legislative history of § 5–117 does not dictate a different result. Petitioner argues that "[w]here two competing, reasonable interpretations exist, the uncodified section cannot

In conclusion, we agree with our appellate brethren when they stated: "SECTION 2 effects an extension of time, from

possibly be a clear expression of legislative intent in favor of retroactive application." Yet, we have held for over a century-and-a-half that: It must be admitted, that by construction, if it can be avoided, no statute should have a retrospect anterior to the time of its commencement. This principle is founded on the supposition that laws are intended to be prospective only. But when a statute, *either by explicit provision or necessary implication, is retroactive,* there is no room for construction. . . .
*Grinder v. Nelson,* 9 Gill 299, 303 (1850) (quoting *Goshen v. Stonington,* 4 Conn. 209 (Conn.1822)) (emphasis added). Invocation of the phrase "or necessary implication"—as an alternative to the statute's "explicit provision"—suggests that the express language of a statute is not the only source from which we may glean the requisite clear expression of legislative intent regarding retrospective application. Accordingly, merely because the plain language of a legislative enactment is ambiguous as to retrospectivity—which we think may be said fairly of Section 2 of Senate Bill 68—does not mean that we may not glean the necessary "clear expression" of legislative intent that an enactment be applied retrospectively. *See Washington Suburban Sanitary Comm'n v. Riverdale Heights Volunteer Fire Co., Inc.,* 308 Md. 556, 561, 520 A.2d 1319, 1322 (1987). Therefore, recourse to legislative history to assist in ascertaining the Legislature's intent by necessary implication, vis á vis retrospective application, is entirely acceptable.

As noted *supra,* the First Reading of Senate Bill 68, by providing that the statute would "apply to any action commenced on or after October 1, 2003, including any action that would have been barred by the application of the [original limitations period]," would have provided for full retrospectivity. For the next piece of the puzzle, we consider that Assistant Attorney General Rowe advised Senator Frosh that "in the absence of a specific provision, the statute could be interpreted to have prospective effect, and that [that] most likely would mean that it would apply only to causes of action based on abuse occurring after the effective date." Rowe Letter, at 5. Although because, as explained *supra,* we hold that § 5–117 is procedural and remedial in nature and thus presumed to be *retrospective*—thus disagreeing with Ms. Rowe's advice—apparently in reliance on Ms. Rowe's advice, the Legislature, nevertheless, decided to keep a modified version of Section 2 (the retrospectivity provision) in the Third Reading of Senate Bill 68. If the Legislature intended for the Bill to apply prospectively only, why would it, armed with advice that becoming silent on the issue of retrospectivity would render the legislation presumed prospective, retain a retrospectivity clause? *See Roe,* 193 Md.App. at 565, 998 A.2d at 387. To us, it appears abundantly clear from this legislative "context," *see Kim,* 376 Md. at 290, 829 A.2d at 619 ("Context becomes important."), that retaining a modified version of the retrospectivity clause evinces a legislative intent that the statute be applied, as the Court of Special Appeals termed it, "partially retroactively."

three years to seven years after majority, for the filing of claims for sexual abuse against a minor that were not barred prior to October 1, 2003, by the then applicable limitations." *Roe,* 193 Md.App. at 565–66, 998 A.2d at 388. Of course, "[i]f the General Assembly did not so intend, it can amend or repeal the statute." *Ali v. CIT Tech. Fin. Servs.,* 188 Md.App. 269, 287, 981 A.2d 759, 769 (2009), *aff'd,* 416 Md. 249, 6 A.3d 890 (2010).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**