828 A.2d 257

**PRINCE GEORGE'S COUNTY, MARYLAND**

v.

**James J. MARINGO.**

**No. 1354, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

June 30, 2003.

**664**

Shalisha Hines Ivy, Assoc. Cty. Atty. (David S. Whitacre, Acting Cty. Atty., Jay G. Creech, Acting Deputy Cty. Atty., on brief), Upper Marlboro, for appellant.

Kimberly A. Alley (Linda D. Moeller, Schlachman, Belsky & Weiner, P.A., on brief), Baltimore, for appellee.

Argued before ADKINS, BARBERA and WILLIAM W. WENNER, (Retired, Specially Assigned), JJ.

ADKINS, J.

Md.Code (1991, 1999 Repl.Vol.), section 9–503 of the Labor and Employment Article ("LE") establishes a presumption, for workers' compensation purposes, that the heart disease or hypertension condition of certain firefighters and law enforcement personnel is an occupational disease arising out of or in the course of their employment. This presumption is commonly known as the "heart presumption."

For Prince George's County deputy sheriffs, however, the presumption does not apply to pre-existing heart disease or hypertension. Rather, only heart disease or hypertension "that is more severe" than existed prior to their employment is subject to the presumption. An uncodified section of the statute requires Prince George's County deputy sheriffs employed with the department on or before September 30, 1996, to submit, by December 31, 1996, a "medical report disclosing and describing any existing heart disease or hypertension from which the deputy sheriff may be suffering[.]" 1996 Md. Laws, ch. 637, § 2 ("House Bill 840").

In this appeal, we are asked to decide whether, as a matter of law, James J. Maringo, appellee, a Prince George's County deputy sheriff whose employment with the department began prior to 1996, is entitled to the heart presumption when he failed to timely submit a baseline medical report. We hold that he was not so entitled as a matter of law, but that he may have substantially complied with House Bill 840 when he supplied a report of his 2000 medical examination. Accordingly, we reverse the Circuit Court for Prince George's County's grant of summary judgment in favor of Maringo. We remand to that court with instructions to reverse the decision of the Worker's Compensation Commission ("the Commission"), and to remand to the Commission for a determination of the existence of two conditions necessary for substantial compliance.

If, on remand, the Commission finds that these two conditions are present, the Commission shall apply the heart presumption to Maringo's claim. Alternatively, if it finds that these two conditions do not exist, the Commission shall rule on the merits of Maringo's claim, without applying the heart presumption.

## FACTS AND LEGAL PROCEEDINGS

Maringo has been employed by Prince George's County ("the County") as a deputy sheriff since 1985. In March 2000, Maringo underwent a physical examination, after which he was informed by his doctor that he had high cholesterol, and was advised to watch his diet and to exercise. His physical examination yielded no signs of heart disease or hypertension.

On April 16, Maringo experienced chest pain. After being transported to the hospital, Maringo was diagnosed with a mild myocardial infarction. Thereafter, he had an angioplasty, during which a stent was placed in one of his arteries. Because of his heart condition, Maringo did not work from April 16 to June 2. In early June, he returned to work on "light duty" status, until early August when he returned to "full duty" status.

In May 2000, the month after his myocardial infarction diagnosis, Maringo filed a claim for benefits with the Commission, asserting that he was entitled to the heart presumption. After an April 20, 2001 hearing, the Commission ruled that Maringo indeed was entitled to the presumption, and awarded him benefits.

The County appealed the Commission's decision to the circuit court. There, both parties filed motions for summary judgment, asserting that the case should be disposed of as a matter of law. The July 22, 2002 trial date served as an impromptu hearing on the summary judgment motions. At this time, the parties stipulated to the facts, and announced that the issue was purely legal in nature. The parties agreed that Maringo "was a Deputy Sheriff before 12-1-96; that he was not aware of any heart disease prior to April of [2000] when he had the heart attack, and [that] ... [h]e had a

physical in March of [2000] that failed to reveal any heart disease or hypertension."

Because of the stipulation between the parties, the circuit court merely heard argument from the parties' attorneys, and then ruled from the bench that the legislation required the following:

> [I]n the event that you do have any existing heart disease or hypertension, you shall provide a copy of medical records disclosing that.
>
> The common sense reading of that is if you do not have those diseases, you are not required to provide a report, so [Maringo] is entitled to the presumption[.]

The County appeals from the circuit court's grant of summary judgment to Maringo, which effectively approved the Commission's decision that the heart presumption applied.

## DISCUSSION

### I.

### Principles Of Statutory Interpretation

■■■ Because this case hinges on our interpretation of the legislation affording Prince George's County deputy sheriffs the benefit of the heart presumption, we shall briefly set forth the well established principles governing statutory construction. "[T]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423 (1995). As always, "[t]he search for legislative intent begins with an examination of the statute itself and if the language is of clear import, the inquiry ends." *Crawley v. General Motors Corp.,* 70 Md.App. 100, 105, 519 A.2d 1348, *cert. denied,* 310 Md. 147, 528 A.2d 473 (1987). "We review the language of the contested provision in the context of the statute as a whole and with respect to the clear purposes the legislature conveyed." *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 445, 795 A.2d 715 (2002).

■■■ Furthermore, " 'we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common

sense.'" *Ward v. Dep't of Pub. Safety & Correctional Servs.,* 339 Md. 343, 352, 663 A.2d 66 (1995) (citation omitted). "[W]here a statute is plainly susceptible of more than one meaning and thus contains an ambiguity," however, we "consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, objectives and purpose of the enactment." *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986). "Language can be regarded as ambiguous in two different respects: (1) it may be intrinsically unclear ...; or (2) its intrinsic meaning may be fairly clear, but its application to a particular object or circumstance may be uncertain. Thus, a term which is unambiguous in one context may be ambiguous in another." *Town & Country Mgmt. Corp. v. Comcast Cablevision of Md.,* 70 Md.App. 272, 280, 520 A.2d 1129, *cert. denied,* 310 Md. 2, 526 A.2d 954 (1987).

## II.

### The Legislation At Issue

In this case, we must interpret 1996 House Bill 840, a piece of legislation that has been only partially codified. Section 1 of the bill is codified as LE section 9–503(b). That section provides:

(b) *Heart disease or hypertension—Police officers.—*

(1) ... [S]ubject to paragraph (2) of this subsection, a Prince George's County deputy sheriff ... is presumed to be suffering from an occupational disease that was suffered in the line of duty if:

(i) the ... deputy sheriff is suffering from heart disease or hypertension; and

(ii) the heart disease or hypertension results in partial or total disability or death.

(2)(i) A Prince George's County deputy sheriff is entitled to the presumption under this subsection only to the extent that [he or she] suffers from heart disease or hypertension that is more severe than [his or her] heart disease or hypertension condition existing prior to [his or her] employment as a Prince George's County deputy sheriff.

(ii) To be eligible for the presumption under this subsection, a Prince George's County deputy sheriff, as a condition of employment, shall submit to a medical examination to determine any heart disease or hypertension condition existing prior to the individual's employment as a Prince George's County deputy sheriff.

Section 2 of House Bill 840, however, remains uncodified.[1] Section 2 added the following procedural prerequisite to application of the presumption to deputy sheriffs employed by the department prior to October 1996:[2]

[N]otwithstanding the provisions of [LE] § 9–503(b)(2) . . ., a Prince George's County deputy sheriff who is employed on or before September 30, 1996:

(1) as a condition of continued employment **shall provide to the Prince George's County Sheriff on or before December 31, 1996 a copy of a medical report disclosing and describing any existing heart disease or hypertension from which the deputy sheriff may be suffering;** and

(2) **is entitled to the presumption** under § 9–503(b) . . . **only to the extent that the individual suffers from heart disease or hypertension that is more severe than the individual's heart disease or hypertension condition existing as of the date of the medical report provided under paragraph (1) of this section.**

1996 Md. Laws, ch. 637, § 2 (emphasis added).

### III.

### The Legislation's Requirement Of A Baseline Medical Report

Maringo contends that the circuit court and the Commission correctly ruled that he was entitled to the pre-

---

**1.** The parties do not dispute that this uncodified portion of the bill has the same force and effect as the codified portion.

**2.** We shall refer to such deputy sheriffs as "existing" deputy sheriffs, as opposed to "new" deputy sheriffs.

sumption even though he did not submit a baseline medical report in 1996. According to Maringo, the legislation's plain language requires existing deputy sheriffs to submit a medical report by December 31, 1996 only if they had a **known heart condition** as of that date. Because he was unaware of any existing heart condition at that time, Maringo argues, he was not required to submit a medical report to "opt-in" to the heart presumption. He explains:

> The plain language of [House Bill 840] . . . does not require a deputy sheriff to submit a medical report "disclosing and describing" heart disease or hypertension from which [he or she is] **not** suffering. It also does not enumerate a requirement mandating that a deputy sheriff submit a medical report verifying that the deputy sheriff is without a medical history of heart disease or hypertension and, in fact, free from any such heart disease or hypertension.

Had the legislature intended for every existing deputy sheriff to submit a medical report, regardless of whether he or she had an existing heart condition, Maringo contends, it would have used different language in its bill.

We disagree. When read as a whole, the legislation unambiguously requires existing deputy sheriffs desiring to benefit from the heart presumption to submit a baseline medical report in 1996. Therefore, in failing to timely submit the required report, Maringo failed to fully comply with the statute. We explain.

Although the provisions of Section 2 of House Bill 840 may be ambiguous when read in isolation, any ambiguity disappears when those isolated provisions are read in the context of the legislation as a whole. *See Schmerling*, 368 Md. at 445, 795 A.2d 715. Subsection (1) states that existing deputy sheriffs "shall provide . . . on or before December 31, 1996, a copy of a medical report disclosing and describing any existing heart disease or hypertension from which the deputy sheriff may be suffering."

As an initial matter, we think the significance that Maringo attributes to the legislature's use of the word "disclos[e]" in

subsection (1) is unwarranted. Maringo argues that one cannot "disclose" a condition that one does not have. The verb "disclose," however, means "[t]o make known (something heretofore kept secret)." *The American Heritage Dictionary of the English Language* (4th ed.2000). We think one can disclose the absence of a condition in the same sense as one can disclose the presence of a condition.

That subsection (1) speaks of disclosure of "any **existing**" heart condition seems to support Maringo's contention that he need not submit a report if he is not suffering from any such existing condition. (Emphasis added.) On the other hand, the same section speaks of a heart condition that a deputy sheriff "may be suffering," language that supports the County's position that all existing deputy sheriffs must submit medical reports. If the legislature intended that only deputy sheriffs with existing heart conditions submit medical reports revealing those conditions, it likely would have spoken in terms of a heart condition that a sheriff "is suffering." We perceive that subsection (1) may be ambiguous when read in isolation.

When subsection (1) is examined in light of subsection (2), however, such perceived ambiguity disappears. Subsection (2) provides that existing deputy sheriffs are only entitled to the heart presumption "to the extent that [they] suffer[ ] from heart disease or hypertension that is more severe than [that] existing as of the date of the medical report provided under" subsection (1). Thus, the legislation clearly contemplated that a medical report, against which to measure the deputy sheriff's heart condition at the time of his or her workers' compensation claim, will be available in every case.

Further, when the provisions of LE section 9–503(b)(2) and Section 2 of House Bill 840 are examined in the context of LE section 9–503 as a whole, it is clear that the legislature intended the heart presumption, as it applies to Prince George's County deputy sheriffs, to be more restrictive, or limited in scope, than the presumption applying to other covered emergency personnel. Only for Prince George's

County deputy sheriffs is the presumption explicitly limited to post-employment heart disease or hypertension.

Both LE section 9–503(b)(2)(ii), governing new deputy sheriffs, and Section 2 of House Bill 840, governing existing deputy sheriffs, provide the mechanism through which the County can determine the existence and extent of the heart presumption—a medical evaluation pinpointed to the applicable date (before his or her employment with the department for new employees, or before the effective date of the presumption, for existing deputy sheriffs). The distinction between the LE section 9–503(b)(2)(ii) requirement that new sheriffs "shall submit to" a medical evaluation to determine their heart health, and the mandate of Section 2 of House Bill 840 that existing deputy sheriffs must provide by a certain date "a copy of a medical report disclosing and describing" their heart condition, is immaterial. Comparing the statute as it applies to both classes of deputy sheriffs supports the County's contention that all Prince George's County deputy sheriffs who wish to benefit from the heart presumption, whether new or existing, are required to have a baseline medical report on file with the department. Without this medical examination and report mechanism, the more restrictive presumption intended for Prince George's County deputy sheriffs could not reasonably be enforced.

■ We agree with the County that it would be wrong to read a knowledge requirement into the statute. It is a basic principle of statutory construction that a court may not rewrite a statute. *See Harford County v. McDonough*, 74 Md.App. 119, 124, 536 A.2d 724 (1988)(court "may not rewrite the statute by inserting or omitting words therein to make the legislation express an intention not evidenced in its original form ... or to create an ambiguity in the statute where none exists"). There is nothing in the language of this legislation, or in its legislative history, which we discuss below, to suggest that the legislature intended to impose a knowledge requirement.

Moreover, reading such a knowledge requirement into the law would lead to illogical results. Under Maringo's interpretation, an existing deputy sheriff with an unknown but existing heart condition in 1996, who did not timely submit a medical report, would be entitled to the heart presumption, a result clearly contrary to the legislature's intent to restrict the presumption to post–1996 heart disease or hypertension. *See Ward*, 339 Md. at 352, 663 A.2d 66. Under Maringo's construction, the County would have no reliable way to limit its exposure to worker's compensation claims based on heart disease or hypertension. Such a construction also would encourage deputy sheriffs to remain in willful ignorance of their heart conditions, at least until the reporting deadline has passed.

We are not persuaded by Maringo's contention that "[i]t would be virtually impossible to obtain a medical opinion in which a physician would be willing to opine that an individual has, in fact, no heart disease." We think Maringo overstates the statutory requirement. The statute merely requires a medical report stating that a particular deputy sheriff has no detectable heart condition at the time of the report. It does not require that the physician opine as to the existence of a heart condition that is medically undetectable.[3] Moreover, there is nothing in the record to suggest that Maringo (or other Prince George's County deputy sheriffs) unsuccessfully tried to obtain such a medical report. Rather, as we discuss below, the parties stipulated that, after the deadline required by Section 2 of House Bill 840, Maringo did, indeed, have "a physical ... that failed to reveal any heart disease or hypertension." A reasonably thorough medical examination that fails to reveal heart disease or hypertension would be sufficient to satisfy Section 2 of House Bill 840.

---

**3.** Such a construction would, indeed, be unreasonable. In construing statutes, "we may consider the consequences of a proposed construction and adopt the construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *State v. Intercontinental, Ltd.*, 302 Md. 132, 137, 486 A.2d 174 (1985).

■ Maringo contends that our interpretation is inconsistent with the remedial purpose of the Worker's Compensation Act. *See Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 472–73, 784 A.2d 569 (2001). We disagree. In this case, evidence of the legislature's specific intent trumps the generalized remedial intent underlying the Worker's Compensation Act. *See Criminal Injuries Compensation Bd. v. Remson*, 282 Md. 168, 192, 384 A.2d 58 (1978)(while statutes of a remedial nature "are to be liberally construed with a view toward the effective administration of justice[,] ... they are not to be given such a construction as will defeat or frustrate the legislative intention"); *Hyatt v. Hyatt*, 53 Md.App. 55, 59, 452 A.2d 436 (1982)("doctrine of liberal construction [of remedial statutes] does not permit [a court] to redraft a clearly-written statute, the language of which makes a limited legislative intent apparent").

■ Both the legislation's plain language, and its legislative history support the same conclusion—namely, that the reporting requirement was established by the legislature in order to effectuate a more restrictive heart presumption for Prince George's County deputy sheriffs. The more limited presumption could only be properly enforced if there existed some way to judge whether a deputy sheriff's heart condition developed before the effective date of the presumption (for existing deputy sheriffs) or the first date of employment (for new deputy sheriffs).

We agree with the County that the purpose statement preceding House Bill 840 [4] makes clear that "[t]he statute does

---

4. That purpose statement provides:

FOR the purpose of extending the presumption of compensability under the workers' compensation law to include, **subject to certain conditions,** Prince George's County deputy sheriffs who suffer from heart disease or hypertension resulting in partial or total disability or death; **requiring certain Prince George's County deputy sheriffs to submit certain medical disclosures** to the Prince George's County Sheriff; providing that, subject to certain limitation, workers' compensation benefits received under this Act are in addition to certain retirement benefits. (Emphasis added.)

not give an automatic entitlement to benefits." Further, the County's legislative position paper, commenting on the 1995 version of the presumption bill, suggests that the reporting requirement was added to the bill as a way of restricting the presumption for Prince George's County deputy sheriffs. In its position paper, the County urged the legislature to amend the draft bill to include the current reporting requirements:

This bill extends the presumption of compensability under Workers' Compensation to the Prince George's County deputy sheriffs who suffer from heart disease or hypertension resulting in disability or death. Police officers and firefighters in general have this presumption now, but only in Montgomery County do deputy sheriffs have this presumption.... In Prince George's County, police and fire fighters have entry physicals. Preexisting heart or hypertension problems would be detected at that time. This has not generally been true for deputy sheriffs, and there are some who have been employed for a number of years with no "base line" physical on record. This bill was introduced last session [1994], but amended by the Delegation to require a physical by a certain date. The same amendments should be adopted this session [1995] if the bill is to be enacted.

The amendments referred to in the position paper ultimately were incorporated into the 1996 legislation. These amendments included the medical report requirement for existing deputy sheriffs and the medical examination requirement for new deputy sheriffs.

The Attorney General's interpretation of House Bill 840 in an advice letter to Governor Glendening is consistent with our plain language interpretation of the legislation. In the May 16, 1996 letter, issued after the bill's passage by the House and Senate, but before it was signed into law by the Governor,[5] the Attorney General commented on the "constitutionality and legal sufficiency" of the bill. The Attorney General concluded that the clause requiring existing Prince George's

---

5. The bill passed the house on March 1, 1996, passed the Senate on April 5, and was signed into law by Governor Glendening on May 23.

County deputy sheriffs to submit a medical report "as a condition of employment" violated the Americans With Disabilities Act ("ADA"):

> We have found the provision contained in Section 2 of House Bill 840 requiring certain medical disclosure from all employed deputy sheriffs in Prince George's County as a condition of their continued employment to be in conflict with federal law and unable to be given effect. **We have construed the remainder of Section 2 to retain the potential benefit for current deputies by authorizing their employer to obtain certain voluntary baseline medical information from these employees as a requirement of eligibility for a presumption of compensability for certain future medical conditions as occupational illnesses.** If the bill is enacted into law, it must be carefully implemented as construed to avoid application that would be precluded under the ADA, and we recommend that its preempted language be deleted by amendment next year.[6] (Emphasis added.)

The Attorney General reasoned that section 2 of House Bill 840

> can ... effectively be read to provide for submission of medical records under paragraph (1), not as a condition of continued employment, but only as a voluntary condition ... in order to be eligible for a presumption of compensable illness under paragraph(2). It would thereby not be mandated for all employed deputies, but would be a threshold requirement for all deputies who wish to be in a position to avail themselves of a particular potential future benefit.

Other documents in the legislative bill file lend further support to the notion that all existing deputy sheriffs desiring to benefit from the presumption must timely file a medical report, whether that report establishes a baseline of "no heart disease or hypertension" or "some heart disease or hyperten-

---

6. Such an amendment has not yet been passed.

sion." [7] The House Economic Matters Committee's Bill Analysis for House Bill 840 explains that the bill adds Prince George's County deputy sheriffs to the list of emergency personnel already covered by the heart presumption, but in a more restrictive manner: "[T]he presumption only applies to the extent that the individual suffers from heart disease or hypertension that is more severe than when the individual became a deputy sheriff."

Several letters written to Thomas L. Bromwell, the Chairman of the Senate Finance Committee, by interested parties also support our construction. In an April 2, 1996 letter to Senator Bromwell, the Fraternal Order of Police ("FOP"), Maryland State Lodge, Inc., urged the Senate to pass House Bill 840. In doing so, the FOP explained that the legislation "was amended to require that [Prince George's County Deputy Sheriffs] **have on file a copy of a baseline physical** to allay fears that older employees may not have been medically screened prior to employment." (Emphasis added.)

In a March 25, 1996 letter to Senator Bromwell, John R. Steirhoff, an Annapolis attorney, wrote:

> Pursuant to our conversation regarding HB 840, I am writing to provide you with a brief overview of the background and intent behind the bill. . . .

> HB 840 is not even as broad as the one passed for the Montgomery County Deputy Sheriffs and will be the most restrictive provision of this section of the law. The bill as it applies to Prince George's Deputy Sheriffs pertains to a presumption for heart and hypertension *only* to the extent the heart disease or hypertension is *more severe* than when the deputy sheriff was first employed.

> In order to be entitled for this presumption, as a condition of employment, current Prince George's County Deputy Sheriffs would be required to submit a copy of a medical report that discloses any existing heart disease or hyperten-

---

7. Nothing in the bill file affirmatively supports Maringo's construction of the statute (*i.e.*, that existing deputies only were required to submit a report in 1996 if they knew of an existing heart problem at that time).

sion and new Deputy Sheriffs would be required to submit to a physical exam to determine if they have any pre-existing heart [disease] or hypertension. **The presumption of coverage will apply ONLY if the officer suffers from heart [disease] or hypertension that is more severe than was present at the medical exam or was disclosed with the submission of the required medical report.** (Emphasis added.)

The documents we examined in the legislative bill file, along with the Attorney General's advice letter and the County's legislative position papers, are consistent with our plain language interpretation of the legislation. In failing to timely submit the medical report necessary to "opt-in" to the heart presumption, Maringo did not fully comply with requirements of the statute.

## IV.

### Possibility Of Substantial Compliance

 Maringo's failure to submit a baseline medical report by the end of 1996 does not foreclose his reliance on the presumption through substantial compliance. As we explained in *Dereggi Constr. Co. v. Mate*, 130 Md.App. 648, 658, 747 A.2d 743 (2000), "[i]f the legislative purpose [of a statute] may be accomplished by something less than strict compliance with the statutory language, substantial compliance will be sufficient to find compliance with the statute's directives." Here, the sole purpose of the medical report requirement in Section 2 of House Bill 840 is to allow the County to compare the extent of an existing deputy sheriff's heart condition before the effective date of the statute with his or her heart condition at the time of the workers' compensation claim.

The parties stipulated before the circuit court that Maringo "had a physical in March of 2000 that failed to reveal any heart disease or hypertension." Although the County acknowledges that it entered into this stipulation, it asserts that the stipulation does not conclusively establish that Maringo's

2000 physical **would have disclosed** such a condition had it existed.

If heart disease and hypertension are progressive conditions, and if Maringo's 2000 physical was thorough enough to disclose such conditions, we think a reasonable inference can be drawn from the results of that 2000 evaluation that Maringo had no heart condition in 1996, when he would have submitted his baseline medical report to the County. The County therefore would have had the benefit of the same information in 2000 that it would have had if Maringo had timely filed his report in 1996. Accordingly, Maringo would have substantially complied with the reporting requirement by establishing that, as late as 2000, he had no heart condition. His lack of strict compliance with the statute would have caused the County no injury because the County would have Maringo's 2000 medical examination to use as a baseline heart condition.

Because both the Commission and the circuit court applied the presumption, there is a limited record before us. The record, as it exists now, is insufficient to support the inference we set forth above. Therefore, we reverse the judgment of the circuit court and remand to that court with instructions to reverse the decision of the Commission, and remand to the Commission for factual findings on two issues, consistent with this opinion:

(1) Was Maringo's 2000 physical examination thorough enough to have revealed heart disease or hypertension had it existed?

(2) Are heart disease and hypertension progressive conditions, such that if Maringo had no heart disease or hypertension in 2000, he also had no such condition in 1996?

If, on remand, it is determined that Maringo's 2000 medical evaluation would have disclosed any existing heart disease or hypertension, and that those conditions are progressive, Maringo is entitled to the heart presumption, and the Commission shall proceed on that basis. Alternatively, if these two conditions do not exist, the Commission shall make a determination

on the merits of Maringo's claim, without application of the heart presumption.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REVERSE THE DECISION OF THE COMMISSION, AND REMAND TO THE COMMISSION FOR FACTUAL FINDINGS ON TWO ISSUES, CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**