**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

_____

No. 453
September Term, 2015

JUNE DIANE DUFFY, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
JAMES F. PIPER

v.

CBS CORPORATION
_____

No. 40
September Term, 2016

JUNE DIANE DUFFY, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
JAMES F. PIPER

v.

CBS CORPORATION
_____

Woodward, C.J.,
Kehoe,
Leahy,

JJ.
_____

Opinion by Woodward, C.J.
_____

Filed:  May 31, 2017

In a complex, multi-party asbestos case brought by James F. Piper, appellant,[1] in the Circuit Court for Baltimore City, CBS Corporation ("CBS"), appellee, filed a motion for summary judgment, contending that the statute of repose barred Piper's cause of action against it. *See* Md. Code (1974, 2013 Repl. Vol.), § 5-108 of the Courts and Judicial Proceedings Article ("CJP"). Following a hearing, the court granted CBS's motion. Piper noted this appeal, presenting three issues, for our review, which we have consolidated into the following question:[2]

> Did the circuit court err in granting CBS's motion for summary judgment?

---

[1] Appellant passed away on June 2, 2016. June Diane Duffy was appointed Personal Representative of the Estate of James F. Piper on June 17, 2016, and a notice of substitution was filed in the instant appeal on August 8, 2016.

[2] Piper's issues presented, as set forth in his brief, are as follows:

1. Whether the trial court erred in relying on this court's decision in *Burns v. Bechtel Corp.* to hold that [CBS] was entitled to the benefit of repose set forth in Md. Cts. & Jud. Pro. § 5-108.

2. Whether the trial court erred in holding that Md. Cts. & Jud. Pro. § 5-108 could be applied retroactively to Mr. Piper's injurious exposure to asbestos that occurred prior to the statute's effective date.

3. Whether the trial court erred in failing to deem [CBS] a manufacturer exempt from repose pursuant to Md. Cts. & Jud. Pro. § 5-108(d)(2)(ii).

For the reasons stated below, we answer this question in the negative and affirm the judgment of the circuit court.

## BACKGROUND

CBS is a Delaware corporation that is the successor by merger to a Pennsylvania corporation bearing the same name, which was formerly known as Westinghouse Electric Corporation ("Westinghouse"). In early 1970, Westinghouse entered into a contract with the Potomac Electric Power Company ("Pepco") to sell a turbine generator for Pepco's Morgantown Generating Station ("Morgantown") in Woodzell, Maryland. Pepco signed a separate contract with Westinghouse for the installation of the turbine generator at the site. The specifications in that installation contract called for the use of insulation containing asbestos.

Piper worked as a steamfitter at Morgantown. Although he did not work directly on the installation of the turbine generator, he worked in the vicinity of the workers installing the turbine generator's insulation. The last day workers installed such insulation was June 28, 1970, and the turbine generator was operational by July of 1970.

On December 26, 2013, Piper was diagnosed with mesothelioma.[3] According to Piper, his mesothelioma was caused by inhalation of asbestos fibers during his career as a

---

[3] Mesothelioma is "a disease in which cancer (malignant) cells are found in the sac lining the chest (the pleura) or abdomen (the peritoneum). This is a rare form of cancer and most people with malignant mesothelioma have worked on jobs where they breathed asbestos." *John Crane, Inc. v. Puller*, 169 Md. App. 1, 19 n.1, *cert. denied*, 394 Md. 479 (2006) (citation and internal quotation marks omitted).

steamfitter, which included the time that he worked at Morgantown.[4] On March 26, 2014, Piper filed a complaint in the circuit court for damages caused by his exposure to asbestos.[5] On January 9, 2015, CBS filed a motion for summary judgment, alleging that Piper's cause of action against it was barred by the statute of repose. Following a hearing, the court entered an order granting CBS's motion on March 9, 2015. Piper thereafter noted this appeal.

---

[4] In his complaint, Piper alleges that in his career as a plumber and steamfitter, he "served in the United States Navy from 1951 to 1954" and "worked with and/or was exposed to asbestos products and/or protective equipment that were manufactured, supplied and/or installed by the Defendants from 1948 to the late 1970s."

[5] The named defendants in Piper's complaint were: (1) "3M Company, f/k/a Minnesota Mining & Mfg. Co., n/k/a 3-M Corporation[;]" (2) "AC & R Insulation Co., Inc.[;]" (3) "A.O. Smith Corporation[;]" (4) "Avco Corporation (for its Spencer-Lycoming Divison)[;]" (5) "Baltimore Aircoil Company, Inc.[;]" (6) "Burnham Corporation[;]" (7) "Carrier Corporation[;]" (8) CBS; (9) "Certainteed Corporation (and as Sucessor in Interest to Gustin Bacon)[;]" (10) "C.J. Coakley Co., Inc.[;]" (11) "Cleaver-Brooks, Inc. (a Division of Aqua-Chem, Inc.)[;]" (12) "Crane Company, Inc. (and as Successor to Pacific Steel Boiler)[;]" (13) "Crown Cork & Seal Company, Inc. Successor in Interest to Mundet Cork Corp.[;] (14) "Federated Development, LLC (as Successor to Pacific Steel Boiler)[;]" (15) "Georgia-Pacific, LLC f/k/a Georgia-Pacific[;]" (16) "Hampshire Industries, Inc. f/k/a John J. Hampshire, Co., Inc.[;]" (17) "Ingersoll-Rand Company[;]" (18) "Kaiser Gypsum Company, Inc.[;]" (19) "Krafft-Murphy Company[;]" (20) "MCIC, Incorporated, f/k/a McCormick Asbestos Co.[;]" (21) "Metropolitan Life Insurance, Co.[;]" (22) "Noland Company[;]" (23) "Oakfabco, Inc., f/k/a Kewanee Boiler Corporation[;]" (24) "Ric-Wil, Inc.[;]" (25) "Sid Harvey Industries, Inc.[;]" (26) SPX Cooling Technologies, Inc., f/k/a Marley Cooling Tower[;]" (27) "Superior Boiler Works, Inc.[;]" (28) "Thos. Somerville Co.[;]" (29) "Trane U.S., Inc., as Successor to and f/k/a American Standard Companies, Inc.[;]" (30) "Union Carbide Corporation[;]" (31) "Uniroyal, Inc.[;]" (32) "The Walter E. Campbell Company, Inc.[;]" and (33) "Weil-McLain, Inc."

## PRELIMINARY MATTER

At the outset of this case, CBS contends that we should dismiss Piper's appeal because he appealed from a non-appealable order, and thus we lack jurisdiction. We deny CBS's motion and determine that we do have jurisdiction to hear this case.

The Court of Appeals has explained:

> A fundamental principle of the statute that defines the jurisdiction of the appellate courts is that, as a general rule, a party may appeal only from "a final judgment entered in a civil or criminal case by a circuit court." CJ § 12–301[.]
>
> * * *
>
> [A] ruling must ordinarily have the following three attributes to be a final judgment: (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy[;] (2) unless the court acts pursuant to Maryland Rule 2–602(b) to direct the entry of a final judgment as to less than all of the claims or all of the parties, it must adjudicate or complete the adjudication of all claims against all parties;[and] (3) it must be set forth and recorded in accordance with Rule 2–601.

*Metro Maint. Sys. S., Inc. v. Milburn*, 442 Md. 289, 297-98 (2015). There are three exceptions to the final judgment requirement: "(1) appeals from interlocutory orders specifically allowed by statute; (2) immediate appeals permitted under Maryland Rule 2-602; and (3) appeals from interlocutory rulings allowed under the common law collateral order doctrine." *Md. Bd. of Physicians v. Geier*, 451 Md. 526, 546 (2017).

The order granting CBS's motion for summary judgment was not final when it was entered, because it did not resolve all claims as to all parties in the instant case. Neither did the order fall into one of the three exceptions listed above. Accordingly, at the time Piper noted his appeal, it was premature.

4

After noting the appeal, however, Piper dismissed from the case the sole remaining defendant, Walter E. Campbell Co., Inc., and asked the circuit court for an order entering a final judgment. On February 8, 2016, the court granted the dismissal and issued the requested order.

Maryland Rule 8-602(e) states, in relevant part:

> (1) If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2-602(b),[6] the appellate court, as it finds appropriate, may . . . (D) **if a final judgment was entered by the lower court after the notice of appeal was filed, treat the notice of appeal as if filed on the same day as, but after, the entry of the judgment.**

(Emphasis added). Because a final judgment was entered by the trial court after Piper noted his appeal, Rule 8-602(e)(1)(D) authorizes us to treat his notice of appeal as if it was filed on the same day as the final judgment, but after the entry thereof. *See McCormick v.*

---

[6] Maryland Rule 2-602(b) states:

> If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:
>
> > (1) **as to one or more but fewer than all of the claims or parties;** or
> >
> > (2) pursuant to Rule 2-501 (f)(3), for some but less than all of the amount requested in a claim seeking money relief only.

(Emphasis added). We note that, at the conclusion of the hearing on CBS's motion, Piper's counsel asked the circuit court to certify the judgment as final pursuant to Rule 2-602. The court indicated a willingness to do so but expressed uncertainty as to the proper procedure. Piper's counsel stated that he would need to "look at the Rule," and the court replied: "Take a look and we'll get back to it." Neither Piper's counsel nor the court ever got "back to it."

*Medtronic, Inc.*, 219 Md. App. 485, 506 n. 5 (2014) (finding "[a]lternatively, because the circuit court's order effectively became final when the [appellants] dismissed their claims against Dr. Rosner with prejudice, we may treat their 'notice of appeal as if filed on the same day as, but after, the entry of the judgment.' Md. Rule 8–602(e)(1)(D).").

Accordingly, we have jurisdiction to address the merits of the instant appeal.

## STANDARD OF REVIEW

Maryland appellate courts have explained:

> "On review of an order granting summary judgment, our analysis 'begins with the determination [of] whether a genuine dispute of material fact exists; only in the absence of such a dispute will we review questions of law.' *D'Aoust v. Diamond,* 424 Md. 549, 574, 36 A.3d 941, 955 (2012) (quoting *Appiah v. Hall,* 416 Md. 533, 546, 7 A.3d 536, 544 (2010)); *O'Connor v. Balt. Cnty.,* 382 Md. 102, 110, 854 A.2d 1191, 1196 (2004). If no genuine dispute of material fact exists, this Court determines 'whether the Circuit Court correctly entered summary judgment as a matter of law.' *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condo.,* 404 Md. 560, 571, 948 A.2d 11, 18 (2008) (citations omitted). Thus, '[t]he standard of review of a trial court's grant of a motion for summary judgment on the law is de novo, that is, whether the trial court's legal conclusions were legally correct.' *D'Aoust,* 424 Md. at 574, 36 A.3d at 955."

*James G. Davis Constr. Corp. v. Erie Ins. Exch.*, 226 Md. App. 25, 34-35 (2015) (quoting *Koste v. Town of Oxford,* 431 Md. 14, 24–25 (2013)), *cert. denied*, 446 Md. 705 (2016).

## DISCUSSION

### I.

In the case, *sub judice*, the parties do not claim that there is a genuine dispute as to any material fact. It is undisputed that (1) the last date of Piper's exposure to asbestos dust generated by the installation of insulation to Unit 1 turbine generator at Morgantown was

6

June 28, 1970; (2) Morgantown's Unit 1 turbine generator, which was fabricated and installed by Westinghouse, was substantially completed no later than July 1970; and (3) Piper was diagnosed with mesothelioma on December 26, 2013. The primary issue in the instant case is whether Piper's cause of action against CBS is barred by the statute of repose, CJP § 5-108, which is an issue of law. Resolution of that issue will require us to engage in statutory construction of Section 5-108.

A.

The statute of repose, as codified in Section 5-108, provides, in relevant part:

> (a) *Injury occurring more than 20 years later. —* Except as provided by this section, **no cause of action for damages accrues** and a person may not seek contribution or indemnity for damages incurred **when** wrongful death, **personal injury**, or injury to real or personal property **resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.**
>
> * * *
>
> (e) *When action accrues. —* **A cause of action for an injury described in this section accrues when the injury or damage occurs.**

(Emphasis added).

In *Rose v. Fox Pool Corp.*, 335 Md. 351 (1994), Judge Irma Raker, writing for the Court of Appeals, set forth the principles of statutory construction that guide us in interpreting Section 5-108. Judge Raker wrote:

> The issues raised in this appeal require us to discern the meaning of § 5–108(a). The cardinal rule of statutory construction is to effectuate and carry out legislative intent. *See, e.g., Comptroller v. Jameson,* 332 Md. 723, 732, 633 A.2d 93, 97 (1993); *Geico v.*

7

*Insurance Comm'r,* 332 Md. 124, 131, 630 A.2d 713, 717 (1993). Every statute is enacted to further some underlying goal or purpose—"to advance some interest, to attain some end"—and must be construed in accordance with its general purposes and policies. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987); *see also State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275, 278 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976). **When called upon to construe a particular statute, we begin our analysis with the statutory language itself since the words of the statute, construed according to their ordinary and natural import, are the primary source and most persuasive evidence of legislative intent.** *Jameson,* 332 Md. at 732, 633 A.2d at 97–98; *Comptroller v. Fairchild Industries,* 303 Md. 280, 284, 493 A.2d 341, 343 (1985). The statute must be construed as a whole so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753, 758 (1993); *Md. Port Adm. v. Brawner Contracting Co.,* 303 Md. 44, 60, 492 A.2d 281, 289 (1985).

**When the language of a statute is plain and clear and expresses a meaning consistent with the statute's apparent purpose, no further analysis of legislative intent is ordinarily required.** *Kaczorowski,* 309 Md. at 515, 525 A.2d at 633. As we explained, however, in *Morris v. Prince George's County,* 319 Md. 597, 573 A.2d 1346 (1990):

> [O]ur endeavor is always to seek out the legislative purpose, the general aim or policy, the ends to be accomplished, the evils to be redressed by a particular enactment. In the conduct of that enterprise, we are not limited to study of the statutory language. The plain meaning rule " 'is not a complete, all-sufficient rule for ascertaining a legislative intention. . . .' " The "meaning of the plainest language" is controlled by the context in which it appears. Thus, we are always free to look at the context within which the statutory language appears. Even when the words of a statute carry a definite meaning, we are not "precluded from consulting legislative history as part of the process of determining the legislative purpose or goal" of the law.

319 Md. at 603–04, 573 A.2d at 1349 (citations and footnote omitted); *see also Baltimore Cty. C.A.U.T. v. Baltimore Cty.,* 321

8

Md. 184, 203–04, 582 A.2d 510, 519–20 (1990); *Kaczorowski,* 309 Md. at 513, 525 A.2d at 632. The legislative history of a statute, including amendments that were considered and/or enacted as the statute passed through the Legislature, and the statute's relationship to earlier and subsequent legislation are "external manifestations" or "persuasive evidence" of legislative purpose that may be taken into consideration. *Maryland Nat'l Bank v. Pearce,* 329 Md. 602, 619, 620 A.2d 941, 949 (1993) (*quoting Kaczorowski,* 309 Md. at 515, 525 A.2d at 632).

*Id.* at 358-60 (emphasis added).

As previously indicated, the primary issue before us in this appeal is whether the statute of repose, Section 5-108, applies to Piper's cause of action against CBS. Piper however, does not base his argument for the non-applicability of the statute on "the statutory language itself" of Section 5-108. *See id.* at 359. Yet, because we believe that the language of the statute "is plain and clear[,]" we will begin our analysis with "the words of the statute, construed according to their ordinary and natural import." *See id.*

It is clear that Piper's cause of action against CBS is based on "personal injury . . . resulting from the defective and unsafe condition of an improvement to real property." CJP § 5-108(a). Piper's cause of action, however, is barred if the personal injury "occurs more than 20 years after the date the entire improvement first becomes available for its intended use." *Id.* Here, because Morgantown Unit 1 turbine generator became operational by July 1970, Piper's injury must have "occurred" on or before July of 1990 for his cause of action to survive.

The date of Piper's last exposure to asbestos dust from Unit 1 turbine generator was June 28, 1970; but his mesothelioma was not diagnosed until 2013. Section 5-108(e) states that "[a] cause of action for an injury described in this section accrues when the injury or

9

damage occurs." In *Burns v. Bechtel Corp.*, 212 Md. App. 237, *cert. denied*, 434 Md. 312 (2013), this Court noted:

> And as the Court of Appeals explained in *Hilliard & Bartko Joint Venture v. Fedco Sys., Inc.,* 309 Md. 147, 162, 522 A.2d 961 (1987), the Statute of Repose incorporates the common law discovery rule of accrual: "**[T]he language of present subsection (e), equating accrual with 'when the injury or damage occurs,' means when the injury or damage is discovered.**"

*Id.* at 243 (emphasis added). In the present case, Piper's injury, mesothelioma, was discovered, and thus "occurred," in 2013, forty-three years after Unit 1 turbine generator "first bec[a]me[] available for its intended use." CJP § 5-108(a). Therefore, because Piper's cause of action did not accrue within 20 years of the placement into operation of Unit 1 turbine generator, Section 5-108(a) applies to his cause of action and precludes its prosecution against CBS.

B.

Piper, however, contends that his cause of action is not barred by the statute of repose because of the statutory language used by the General Assembly when the statute was originally enacted in 1970. Chapter 666 of the Acts of 1970 reads its entirety:

CHAPTER 666

(Senate Bill 241)

> AN ACT to add new Section 20 to Article 57 of the Annotated Code of Maryland (1968 Replacement Volume), title "Limitations of Actions," to follow immediately after Section 19 thereof, **to prohibit the bringing of actions based on injuries arising out of defective conditions of improvements to real property against certain persons after a specified period of time and providing that the provision of the Act shall not apply to actions accruing prior to its effective date.**

10

SECTION 1. *Be it enacted by the General Assembly of Maryland,* That new Section 20 be and it is hereby added to Article 57 of the Annotated Code of Maryland (1968 Replacement Volume), title "Limitations of Actions," to follow immediately after Section 19 thereof, and to read as follows:

*20.*

*No action to recover damages for injury to property real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages incurred as a result of said injury or death, shall be brought more than ~~nine~~ TWENTY years after the said improvement was substantially completed. This limitation shall not apply to any action brought against the person who, at the time the injury was sustained, was in actual possession and control as owner, tenant, or otherwise of the said improvement. For purposes of this section, "substantially completed" shall mean when the entire improvement is first available for its intended use.*

SEC. 2. *And it be further enacted,* That **this Act shall not apply to any cause of action arising on or before June 30, 1970.**

SEC. 3. *And it be further enacted,* That this Act shall take effect July 1, 1970.

Approved May 21, 1970.

(Italic emphasis in original) (bold emphasis added).

Piper contends that the circuit court erred in applying the statute of repose to bar his cause of action against CBS, because his injury "arose" on June 28, 1970, and the session law that passed the original statute of repose contained language indicating that the statute does not apply to injuries arising on or before June 30, 1970. Piper notes that he agrees with CBS that his injury "accrued" in 2013 when his injury was discovered, but distinguishes the date of accrual from the date his that injury arose by arguing that the date

11

of accrual is irrelevant here. Furthermore, Piper argues that the statute of repose cannot be applied retroactively to him, "because subsequent revisions and amendments to the statute lack a 'clear expression' in favor of retroactivity."

CBS responds that the circuit court correctly found that CBS was entitled to repose, because Piper's cause of action accrued more than twenty years after the improvement was substantially completed. CBS asserts that Piper's reliance on when his injury "arose" is misplaced, because the anti-retroactivity language appearing in Section 2 of the session law was not codified after the statute was enacted.

CBS is correct that, when Chapter 666 of the Acts of 1970 was codified in Article 57 § 20, Section 2 was not included. Piper, however, relies heavily on the case of *Roe v. Doe*, 193 Md. App. 558 (2010), *aff'd*, 419 Md. 687 (2011), for the proposition that "the uncodified sections of the statute of repose continue to carry the force of law." In *Roe*, this Court construed and applied the uncodified retroactivity provisions of a statute that increased the limitations period from 3 years to 7 years for minor victims of sexual abuse to bring an action for damages arising out of such abuse after attaining the age of majority. *Id.* at 564-69. On appeal, the Court of Appeals affirmed our construction of the retroactivity provision of Chapter 360 of the Acts of 2003. *Doe v. Roe*, 419 Md. 687, 699, 709-10 (2011). In so doing, the Court noted that the retroactivity provision of Chapter 360 had not been codified in CJP § 5-117. *Id.* at 699. In a footnote to that observation, the Court stated:

> *See* MARYLAND DEPARTMENT OF LEGISLATIVE SERVICES, LEGISLATIVE DRAFTING MANUAL 2011, at 97 (2010) ("Provisions of law need not be codified in order to be legally

12

> binding."); *Prince George's County v. Maringo,* 151 Md.App. 662, 671 n. 1, 828 A.2d 257, 262 n. 1 (2003) ("The parties do not dispute that this uncodified portion of the bill has the same force and effect as the codified portion.").

*Id.* at 699 n. 11.

The problem with Piper's reliance on *Roe* and *Doe* is that the uncodified retroactivity provision of Chapter 360 was never subject to repeal and reenactment. Here, Article 57, § 20, the codified version of Chapter 666, was repealed in 1974 and reenacted as CJP § 5-108. *See Hillard*, 309 Md. at 160. Section 2 of Chapter 666 was not included in CJP § 5-108. *See id.* at 160-61. Moreover, as pointed out by CBS, "§ 5-108 was enacted with substantive changes in its definition of scope and operation of the repose afforded thereby." *See also id.*

Nevertheless, Piper argues that, because (1) none of the amendments or revisions to the statute of the repose expressly repealed Section 2, and (2) "there is a 'strong presumption' against finding that a statutory revision implicitly repeals a section of a statute absent 'clear legislative intent [in] support,'" "the uncodified sections of the statute of repose continue to carry the force of law." We need not resolve the issue of Section 2's viability, because even if Section 2 of Chapter 666 retains "the force of law," we conclude that Piper's cause of action is still barred by the statute of repose. We shall explain.

Under Section 2 of Chapter 666, the question is whether Piper's cause of action "arose" prior to July 1, 1970. To answer this question, we need to determine what the General Assembly meant by the term "arising" in Section 2: does it mean, as Piper contends, when one is exposed to asbestos, or does it mean, as CBS contends, when a cause

13

of action accrues, which, under the discovery rule, is the date that one discovers the injuries caused by asbestos exposure? *See Mathews v. Cassidy Turley Md., Inc.*, 435 Md. 584, 611 (2013) (Under the discovery rule, "a cause of action accrues when the wrong is discovered or when with due diligence it should have been discovered.").

In *Hillard*, the Court of Appeals set forth the history of CJP § 5-108, beginning with the enactment of Chapter 666 of the Acts of 1970. 309 Md. at 160. Speaking for the Court, Judge Lawrence Rodowsky wrote:

> The predecessor to present § 5-108 was enacted by Ch. 666 of the Acts of 1970. In the year preceding this enactment *Steelworkers Holding Co. v. Menefee,* 255 Md. 440, 258 A.2d 177 (1969) had applied the discovery rule to determine accrual of a cause of action for general statute of limitations purposes in a malpractice action against an architect. That same year *Mattingly v. Hopkins,* 254 Md. 88, 253 A.2d 904 (1969) had held the discovery rule governed accrual of a malpractice action against a professional engineer. The discovery rule had earlier been applied in *Callahan v. Clemens,* 184 Md. 520, 41 A.2d 473 (1945) to the accrual of a cause of action by an adjoining property owner against a contractor who had allegedly negligently erected a wall. **It was clear that one purpose of Ch. 666 was to set a time limit after which the discovery rule could not operate.**
>
> Chapter 666 was modified as part of the Code revision project when the Courts and Judicial Proceedings Article was enacted, effective January 1, 1974. From a prohibition, "[n]o action . . . shall be brought," the language was changed to read in relevant part:
>
>> Except as provided by this section, *no cause of action for damages accrues* . . . when . . . injury to real . . . property resulting from the defective . . . condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use. [Md.Code (1974), CJ § 5-108(a) (emphasis added).]
>
> Present § 5-108(d) was subsection (b) in the 1974 enactment. The 1974 changes also added as subsection (c) the language now found

14

in (e) ("A cause of action for an injury described in this section accrues when the injury or damage occurs.").

*Id.* at 160-61 (italic emphasis in original) (bold emphasis added) (footnote omitted).

Because "one purpose of Chapter 666 was to set a time limit after which the discovery rule could not operate[,]" *id.* at 160, a cause of action based on a latent defect or injury that had not accrued under the discovery rule was cut off after twenty years from the time the improvement first became available for its intended use. *See id* at 161-62. Piper's construction of the statute, however, would create a class of unaccrued causes of action exempted from the statute where the latent defect or injury was present prior to July 1, 1970. Such a construction is contrary to the "clear" purpose of Chapter 666. *See id.* at 160.

In addition, in the preamble to Chapter 666, the General Assembly set forth the purpose of Section 2 by stating "that the provision of the Act shall not apply to actions *accruing* prior to its effective date." (Emphasis added). Section 2 then states "[t]hat this Act shall not apply to any cause of action *arising* on or before June 30, 1970." (Emphasis added). To construe the term "arising" in Section 2 to mean something different from the term "accruing" in the preamble would create an ambiguity, if not an outright conflict, between the purpose of Section 2, as expressed in the preamble, and the statutory language of Section 2 implementing that purpose. Moreover, the distinction between when a cause of action "arose" and when a cause of action "accrued" did not exist in Maryland case law until sometime after the enactment of Chapter 666 in 1970 when personal injury cases based on a disease with a long latency period, such as asbestos exposure cases, were

15

brought.  *See John Crane, Inc. v. Scribner*, 369 Md. 369, 383, 390 (2002) (noting, for

purposes of the non-economic damages cap statute, which was passed in 1986, "the

distinction made by the Legislature between when an action arises and when it accrues").

Piper's argument that the two terms have distinct meanings, although correct today for

asbestos exposure cases, cannot be grafted onto the General Assembly's intent in 1970

when the statute of repose was passed, because those terms had not yet been distinguished.

Finally, under the Maryland Constitution, the General Assembly cannot take away

vested property rights.  *See* Md. Const. art. III, § 40, Md. Const. Declaration of Rights, Art.

19, 24.  In general, a property right becomes vested only when it accrues.[7]  *See Dua v.*

*Comcast Cable of Md., Inc.*, 370 Md. 604, 632-33 (2002).  ("[T]here normally is a vested

property right in a cause of action which has accrued prior to the legislative action.").

---

[7] Although his cause of action against CBS did not accrue prior to the enactment of Chapter 666 in 1970, Piper argues that the application of the statute of repose to his unaccrued action would be unconstitutional.  A similar argument was rejected by the Court of Appeals in *Whiting-Turner Contracting Co. v. Coupard*, 304 Md. 340 (1985).  In *Whiting-Turner*, appellants claimed that Article 19 of the Maryland Declaration of Rights was violated, because Section 5-108(b) cut off any claim for indemnity against an architect or professional engineer "before a cause of action for indemnity could even have accrued."  *Id.* at 359-60.  The Court responded:

> Chapter 698 of the Acts of 1979 which enacted subsections (b) and (c) provided: "That this Act shall take effect July 1, 1979."  The operative words of subsection (b) are that "[a] cause of action for damages does not accrue and a person may not seek contribution or indemnity. . . ."  **Consequently we cannot accept an alternative argument advanced by CPC that subsection (b) applies only to claims based on Injury where Completion occurred on or after July 1, 1979.**

*Id.* at 360 n.3 (emphasis added).

Because of such constitutional limitation, the preamble states that Chapter 666 does not apply to causes of action "accruing prior to its effective date." Section 2 of Chapter 666 implements that purpose so that the application of Chapter 666 will be constitutional. There is nothing in the language of Chapter 666 to indicate that Section 2 goes beyond protecting the statute's constitutionality. Therefore, from the standpoint of Chapter 666's constitutionality, "arising" in Section 2 means "accruing."

In sum, because of the history, language, and purpose of Chapter 666 of the Acts of 1970, we conclude that the term "arising" in Section 2 carries the same meaning as the term "accruing:" the date that the injury is discovered. Accordingly, Section 2 does not bar the application of the statute of repose to Piper's cause of action.

## II.

The statute of repose has an exemption for manufacturers in asbestos-related litigation:

> (2) **This section does not apply if**:
>
> * * *
>
> (ii) **In a cause of action against a manufacturer** or supplier **for damages for personal injury or death caused by asbestos or a product that contains asbestos, the injury** or death **results from exposure to asbestos dust or fibers which are shed or emitted** prior to or **in the course of the** affixation, application, or **installation of the asbestos or the product that contains asbestos** to an improvement to real property[.]

CJP § 5-108(d)(2)(ii) (emphasis added).

Piper contends that, if the statute of repose applies, CBS does not benefit from it, because CBS is a manufacturer of asbestos, and thus falls within the statute's exemption.

17

CBS responds that it is not a manufacturer, because the turbine generator installed at Morgantown is not a "product," and because CBS did not manufacture the injury-causing asbestos used in the insulation. CBS also argues that, even if it is a manufacturer under Section 5-108(d)(2), the application of that section's exemption to Piper's cause of action would be unconstitutional, because such exemption was not enacted until 1991, which was after Piper's claim was barred on July 1, 1990. We agree with CBS that applying the manufacturer's exemption of the statute of repose to Piper's claim would be unconstitutional.

The Court of Appeals made clear in *Dua* that "[f]rom the earliest cases to the present, this Court has consistently taken the position that retroactive legislation, depriving persons or private entities of vested rights, violates the Maryland Constitution, regardless of the reasonableness or 'rational basis' underlying the legislation." 370 Md. at 625. One such vested right is the right not to be sued on "a cause of action that was otherwise barred." *Id*. at 627 ("A statute, which retroactively created a cause of action, resulting in reviving a cause of action that was otherwise barred, was held to deprive the defendant of property rights in violation of Article 24 of the Declaration of Rights." (citing *Smith v. Westinghouse Elec.*, 266 Md. 52, 57 (1972))).

In the case *sub judice*, Piper's cause of action against CBS as to the turbine generator was barred by the statute of repose prior to the enactment of the manufacturer's exemption in 1991. The turbine generator was completed in July of 1970. Pursuant to CJP § 5-108(a), Piper's cause of action would have had to "accrue" on or before July of 1990, for Piper to avoid the bar of the statute. Both parties agree that Piper's cause of action accrued on

December 26, 2013, when he was diagnosed with mesothelioma. Because Piper's cause of action accrued after July of 1990, CBS had a vested right in not being sued as of that date. *See Dua*, 370 Md. at 627, 633. Accordingly, the 1991 amendment creating the manufacturer's exemption could not revive Piper's claim against CBS, "a cause of action that was otherwise barred." *Id*. at 627.

## CONCLUSION

In sum, the plain language of the statute of repose, CJP § 5-108, bars Piper's cause of action against CBS, because Piper's cause of action accrued when his mesothelioma was diagnosed in December 2013, which was more than twenty years after the turbine generator installed by Westinghouse at Morgantown became operational in July of 1970. Section 2 of the original statute of repose, Chapter 666 of the Acts of 1970, which precluded application of the statute to "any cause of action *arising* on or before June 30, 1970[,]" does not apply to Piper's cause of action, because the term "arising" means "accruing" in the context of the history, language, and purpose of the statute. (Emphasis added). The manufacturer's exemption, set forth in Section 5-108(d)(2), also does not apply, because the application of such exemption would unconstitutionally deprive CBS of its vested right in not being sued for causes of action barred by the statute of repose prior to the exemption's enactment in 1991. Accordingly, the trial court did not err in granting CBS's motion for summary judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**